UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


LLOYD BROWN, III,

        Plaintiff,

    v.                                  Case No.:  2:13-cv-830
                                                 JUDGE SMITH
                                                 Magistrate Judge Deavers

UNITED OF OMAHA LIFE
INSURANCE COMPANY, *et. al*,

        Defendants.


## OPINION AND ORDER

      This matter is before the Court upon Plaintiff's Motion for Damages, Attorneys' Fees, Interest, and Costs (Doc. 47).  Defendant United of Omaha Life Insurance Company ("United") filed a Response in Opposition (Doc. 48).  The Court finds the issues are fully briefed and are ripe for review.[1]  For the reasons that following, Plaintiff's Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.      BACKGROUND

      Plaintiff filed the pending motion in accordance with the Court's previous Opinion and Order granting in part and denying in part Plaintiff's Motion for Judgment on the Pleadings. (Doc. 43, Order).  In said Opinion and Order, the Court found United's decision to deny Plaintiff benefits was arbitrary and capricious and granted Plaintiff summary judgment on his ERISA claim.  In the same Opinion and Order, the Court also dismissed Plaintiff's seven state law

---

[1] Defendant filed a notice of appeal following this Court's May 18, 2015 Opinion and Order.  (*See* Doc. 44). On September 18, 2015, the Sixth Circuit Court of Appeals dismissed that appeal without prejudice to the Defendant's right to file a timely notice of appeal upon entry of final judgment.  (*See* Doc. 50).

causes of action on preemption grounds.  Therefore, the Court entered judgment in favor of Plaintiff as to his ERISA claim, and in favor of United as to all remaining state law claims.

The Court then requested further briefing as to the issues of damages, attorneys' fees, and costs.  Following the Court's directive, the parties filed the memoranda now before the Court.

## II.     DAMAGES

Plaintiff asks the Court to award him $181,666.67, which he argues is the amount of benefits due him under the life insurance plan at issue.  To the contrary, United argues Plaintiff is only entitled to $30,000, the amount of coverage Plaintiff's father initially elected.

As set forth in the Court's previous Opinions, in December 2011, Plaintiff's father, Lloyd Brown, II ("Brown II"), telephonically enrolled in a life insurance plan with Hartford Insurance Company in the amount of $30,000, to become effective February 1, 2012. (Doc. 16, Admin. Rec. at 196-97 (benefit election authorization)).  Between December 2011 and February 2012, Brown II's employer switched insurance providers from Hartford to United.   This change in providers did not appear to alter Brown II's election, however: on its website, United listed his coverage as "approved" as of February 1, 2012, and from that date, Brown II's employer proceeded to deduct life insurance premiums from his paychecks until his death on November 27, 2012.  (*See* Admin. Rec. at 57 (online coverage summary); *id*. at 59-95 (pay records)). Specifically, from February 1, 2012 to March 14, 2012, $4.68 was deducted from Brown II's paycheck every week for "OPT LIFE INSUR." (*See id*. at 59-77 (pay records)).  From March 14, 2012, to the date of his death, Brown II's employer deducted $28.34 per week, as a reflection of his request to increase the face value of his policy.  (*See id*. at 78-95 (pay records)).  As the Court previously calculated:

> When he died, Brown II was 56. . . .  Thus, in the months before his death, Brown, II was within the age range of 55 to 59.  According to the policy issued to

West Side by Defendant, United of Omaha Life Insurance Company, in that age bracket, Brown II's monthly premium per $1000 of life insurance would have been $0.676. (Doc. 16, Ex. 1, Admin. Rec. Pt. 1 at 4 (policy premium rider)). At $4.68 per week, 52 weeks per year, the annual premium Brown, II was paying prior to March 14, 2012, was $243.36.  Thus, his monthly premium would have been $20.28.[2]  Since $1000 of insurance cost $0.676 per month, $20.28 per month purchased him $30,000 of life insurance.[3]  When Brown began paying more, after March 14, 2012, he paid $28.34 per week.  Using the same calculation, this translates into a monthly premium of $122.81.[4]  At $0.676 per month per $1000 of insurance, this would have afforded him $181,666.67 of life insurance.[5]

(Doc. 25, Order, at 2).

The Court finds this calculation, along with the policy documents, pay records, and benefit summary contained in the administrative record support Plaintiff's claim for $181,666.67.  As set forth above, Brown II's pay records and United's own policy supports this calculation: at the time of his death, Brown II was paying $122.81 per month for life insurance at a rate of $0.676 per $1000 of coverage—resulting in $181,666.67 of coverage.  (*See* Admin. Rec. at 4 (policy premium rider); *id.* at 78-95 (pay records)).  Consistent with this calculation, United's online benefits portal represented that at the time of Brown II's death, he had been approved not only for $30,000 in voluntary life insurance coverage, but for $180,000.  (*See* Admin. Rec. at 57 (online benefits summary)).  Thus, United's own representations and premium riders support, not discredit, Plaintiff's damages calculation.

For these reasons, the Court finds Plaintiff is entitled to damages in the amount of **$181,666.67** for benefits due him under the policy.

---

[2] $\dfrac{\$4.68/wk \times 52wks/yr}{12months/yr} = \$20.28/month$

[3] $\$0.676/month = \$1000$ $\qquad \dfrac{\$20.28/month}{\$0.676/month} = 30 \qquad 30 \times \$1000 = \$30,000$

[4] $\dfrac{\$28.34/wk \times 52wks/yr}{12months/yr} = \$122.81/month$

[5] $\$0.676/month = \$1000$ $\qquad \dfrac{\$122.81/month}{\$0.676/month} = 181.\overline{6} \qquad 181.\overline{6} \times \$1000 = \$181,666.67$

### III.    PRE-JUDGMENT INTEREST

Plaintiff also asks the Court to award him pre-judgment interest from November 27, 2012, the date of Plaintiff's father's death.  United curiously does not address this issue in its response.

Title 28 U.S.C. Section 1961 allows the Court to impose prejudgment interest on all money judgments awarded in civil cases.  *Id.* ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").  This includes judgments awarded in ERISA cases. *See Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998) ("Although ERISA does not mandate the award of prejudgment interest to prevailing plan participants, we have long recognized that the district court may do so at its discretion in accordance with general equitable principles.").  In determining whether and at what rate to impose prejudgment interest, the Court must consider a host of factors, such as "the remedial goal to place the plaintiff in the position that he or she would have occupied prior to the wrongdoing; the prevention of unjust enrichment on behalf of the wrongdoer; the lost interest value of money wrongly withheld; and the rate of inflation."  *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 687 (6th Cir. 2013).

After considering these factors, the Court finds it appropriate to award prejudgment interest to Plaintiff at the prevailing market rate of 3.25%.  Upon Plaintiff's father's death, Plaintiff quickly took all steps necessary, and provided all documentation required, to file his claim for benefits.  Nonetheless, United arbitrarily and capriciously denied Plaintiff's claim, withholding a substantial amount of benefits that were rightfully his for over two years.  The Court finds utilizing the current prevailing market interest rate, as opposed to the lower statutorily calculated rate, more adequately compensates Plaintiff for the "time value of the lost

4

money as well as for the effects of inflation." *See id*. (quoting *United States v. City of Warren*, 138 F.3d 1083, 1096 (6th Cir. 1998)). However, the Court awards such interest not from the date of Plaintiff's father's death, but from the date United initially denied Plaintiff's life insurance claim: February 20, 2013. (*See* Doc. 16, Admin. Rec. at 167 (denial letter)).

Accordingly, the Court awards Plaintiff prejudgment interest at the prevailing market rate of 3.25% from February 20, 2013 to the date final judgment is entered in this case.

## IV.    ATTORNEYS' FEES

Plaintiff next asks the Court to award him $85,730.00 in attorneys' fees. In support of his request, he submitted billing statements from the law firms of Bidwell & Beachler and Kernen & Shepler as well as the affidavits of attorneys Jinx Beachler, Gregory Kamer, and Will Kernen. (*See* Doc. 47, Exs. 1-4, Mot. for Atty Fees). In opposition, United first argues that the Court should use its discretion to deny awarding Plaintiff any attorneys' fees. In the alternative, United asks the Court to reduce Plaintiff's requested award for three reasons: (1) Plaintiff's attorneys' rates are unreasonable; (2) Plaintiff's attorneys improperly included work performed on non-ERISA claims in their award calculation; and (3) the billing statement from Kernen & Shepler does not provide enough detail on which to award fees. In support of its brief, United provided the affidavit of attorney Tony Merry as well as a chart of its suggested fee reductions. (*See* Doc. 49, Ex. A, Merry Aff.; Doc. 48, Ex B, Chart).

## A.    Propriety of Awarding Attorneys' Fees

"In an action by a plan participant, the district court, in its discretion, 'may allow a reasonable attorney's fee and costs of action to either party.'" *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006) (quoting 29 U.S.C. § 1132(g)(1)). In determining whether to exercise such discretion, the Court is guided by several factors: "(1) the degree of the

5

opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions." *Id.* No single factor is determinative to the Court's analysis. *Wells v. U.S. Steel*, 76 F.3d 731, 736 (6th Cir. 1996); *Kauffman v. Sedalia Med. Ctr., Inc.*, No. 204-CV-543, 2007 WL 490896, at *1 (S.D. Ohio Feb. 9, 2007) (Sargus, J.).

After considering the circumstances of this case along with the factors listed above, the Court finds Plaintiff is entitled to attorneys' fees incurred in prosecuting his ERISA claim. With regard to the first factor, the Court acknowledges that United's denial of benefits in and of itself does not necessarily amount to "bad faith." *See Kauffman*, 2007 WL 490896, at *1. Rather, the Court must look to "the circumstances surrounding the denial to determine the level of Defendants' culpability." *Id.* As outlined above, United has withheld benefits from Plaintiff for over two years, despite affirming Brown II's coverage on its website and collecting premiums from Brown II's paychecks for ten months. The Court finds these circumstances (and accordingly the first factor) weigh in favor of Plaintiff.

United does not contest the second factor, as it is a large insurance company undoubtedly capable of satisfying any award ordered by the Court. Thus, the second factor also weighs in favor of Plaintiff.

With respect to the deterrent effect of awarding attorneys' fees, the Court disagrees with United and finds that this factor too weighs in favor of Plaintiff. United argues that because the facts of this case are "unique," imposing attorneys' fees would have no deterrent effect on future litigation. While in a micro sense, this case involves somewhat "unique" circumstances, in a

6

macro sense it does not: employers routinely switch insurance providers, and the new provider's task of reviewing and approving employees' prior coverage cannot be that uncommon. As such, the Court finds that an imposition of attorneys' fees may encourage insurance providers to review their policies, communicate better with employers, proactively request necessary documentation from its insureds, and ensure the information it provides to its insureds is current and correct. The Court therefore finds the third factor also weighs in favor of Plaintiff.

Conversely, the fourth factor weighs in favor of United, as Plaintiff brought this case on behalf of himself and did not seek to resolve significant legal questions regarding ERISA.

The final factor is a close call: the merits of Plaintiff's ERISA claim were obviously strong and supported by United's own policy documents and benefit statements. On the other hand, although the Court disagreed with United's analysis of its policy and its decision to deny Plaintiff benefits, its position arguably had some basis in law and fact. Therefore, the Court finds the fifth factor favors neither party.

In sum, three factors weigh in favor of Plaintiff, one factor weighs in favor of United, and one factor weighs in favor of neither party. Based on this determination and the facts of this case, the Court exercises its discretion and awards Plaintiff attorneys' fees in conjunction with his successful ERISA claim. The specific amount of fees awarded will be discussed in greater detail below.

**B.      Specific Amount of Attorneys' Fees Awarded**

Plaintiff requested $59,100.00 for the work of attorney Jinx Beachler and $27,022.92 for the work of attorneys Will Kernen and Ryan Shepler. The Court will address each request in turn.

1.    **Bill for Attorney Beachler**

Plaintiff seeks an award of $59,100.00 (118.2 hours at a rate of $500 per hour) for work performed by attorney Jinx Beachler on this case. In support of his claim, Plaintiff provided the Court with Ms. Beachler's line item bill and the sworn affidavits of Ms. Beachler and attorney Gregory Kamer. In Ms. Beachler's affidavit, she states that her billing statement is a "conservative documentation of the time spent on this case" and avers that in light of her education and experience, she believes her rate of $500 per hour is reasonable.[6] (Doc. 47, Ex. 2, Beachler Aff. at ¶¶ 11-16). The affidavit of Gregory Kamer supports Ms. Beachler's position, as he testifies that his regular hourly fees "range from $500 to $550 per hour." (*See* Doc. 47, Ex. 3, Kamer Aff. at ¶ 9). However, Mr. Kamer practices exclusively in Nevada; therefore, the Court is reluctant to afford much weight to Mr. Kamer's opinion as to the reasonableness of Ms. Beachler's fee in the Columbus, Ohio legal market.

United argues that Ms. Beachler's rate of $500 is unreasonable, and in support of its position offers the affidavit of attorney Tony Merry, an experienced Columbus-based litigator whose practice focuses primarily on ERISA matters. (*See* Doc. 48, Ex. 1, Merry Aff. at ¶¶ 1-4). Mr. Merry asserts that a rate of $400 per hour would be more reasonable for "a seasoned ERISA litigator." (*Id*. at ¶ 13).

The Court agrees with Mr. Merry and finds that a rate of $400 per hour sufficiently reflects Ms. Beachler's education and experience while also taking into consideration the nature of the case and the Columbus legal market. Accordingly, the Court will award Ms. Beachler fees in the amount of $400 per hour for work performed on Plaintiff's successful ERISA claim.

---

[6] The Court notes that Ms. Beachler does not testify as to what her normal or typical rate is—only that she believes that in this case, $500 per hour is appropriate.

Which brings the Court to the next issue: how many hours did Ms. Beachler spend prosecuting Plaintiff's ERISA claim?  Ms. Beachler submitted a bill for 118.2 hours.  United requests this amount be reduced by 53.2 hours for a variety of reasons.  After reviewing Ms. Beachler's billing statement, the Court agrees that Ms. Beachler's bill must be reduced.  The following line items either (1) do not reflect substantive legal work; (2) are too vague for the Court to ascertain whether they were necessary to the success of Plaintiff's ERISA claim; or (3) relate to work performed in conjunction with Plaintiff's unsuccessful state law claims.  As such, the Court finds the following line items are improper:

**Non-substantive legal work[7]:**

| | | |
|---|---|---|
| 10/11/13 | court notice – " notice motion/order visser" | 0.1 |
| 10/14/13 | court notice – "rule 26 report filed" | 0.1 |
| 10/23/13 | court notice – "order of the court filed, reviewed" | 0.4 |
| 11/20/13 | court notice – "filing of administrative record" | 0.1 |
| 3/31/14 | court notice – "response in opposition Omaha" | 0.1 |
| 3/31/14 | court notice – "response in opposition West Side" | 0.1 |

---

[7] In addition to these approved reductions, United also asked the Court to reduce Ms. Beachler's bill for her work done on 5/14/14 for "court notice – 'court decision Judge Smith review'" because it was non-substantive legal work. However, unlike the other line items listed above, this work entailed more than just receiving a notice: Ms. Beachler spent this time reviewing a substantive legal decision of the Court.  For this reason, United's request concerning this line item is not well-taken.

| | | |
|---|---|---|
| 6/24/14 | court notice – "notice of status conf" | 0.1 |
| 6/27/14 | court notice – "reset deadlines, stipulation" | 0.1 |
| 7/21/14 | court notice – "orders" | 0.1 |
| 9/12/14 | court notice – "supplemental | 0.1 |
| 10/15/13 | "redacted record received" | 0.1 |

[Total Reduction: 1.4 hours]

-------------------------------------------------------------

**Too vague:**

| | | |
|---|---|---|
| 8/28/13 | phone calls – "from Kernen" | 0.1 |
| 9/1/13 | "emails research" | 1.3 |
| 9/3/13 | "fax from Kernen" | 0.1 |
| 10/6/13 | emails – "counsel" | 0.2 |
| Undated | phone calls – "Kernen" | 0.1 |
| 6/11/14 | emails – "Kernan" [sic] | 0.2 |
| Undated | emails – "Kernen" | 0.2 |

[Total Reduction: 2.2 hours]

-------------------------------------------------------------

**Work Performed in Conjunction with Unsuccessful State Law Claims:**

| | | |
|---|---|---|
| 12/10/13 | "pleadings filed by Defendants, review, file review, administrative record" | 6.7 |

10

| 1/14/14 | "preparation memo in oppositions, Kernan phone call" | 8.4 |
| 1/23/14 | "continue prep on memo in opposition, review of pertinent parts of the administrative record" | 3.8 |
| 1/24/14 | "finalization of memos in oppositions with co-counsel" | 1.2 |
| 1/27/14 | "finalization of memos filing, email" | 1.3 |
| 2/14/14 | "review of replies filed by Defendants" | 1.1 |
| 12/13/14 | "review reply" | 0.3 |

[Total Reduction: 22.8 hours]

-------------------------------------------------------------

**Work Performed in Conjunction with Both ERISA and State Law Claims:**

Because the following work related to Plaintiff's successful ERISA claim *and* his unsuccessful

state law claims, the Court finds it appropriate to award a fraction of Ms. Beachler's time to

reflect only her time spent prosecuting Plaintiff's prevailing claim.  The Court will award 1/8 of

the billed time (1 successful ERISA claim out of 8 total claims) for the following line items:

| 2/25/14 | "email to co-counsel on amendment draft from co-counsel" | 2.1 |
| 2/26/14 | "redrafting, research, emails" | 2.8 |
| 3/6/14 | "redrafting, research, emails" | 2.4 |
| 3/7/14 | "redrafting, research, emails" | 1.9 |
| 3/11/14 | "proposed amendment and | 0.9 |

11

| | | |
|---|---|---|
| | motion for discovery" | |
| 3/14/14 | "filing of motions" | 0.3 |
| 4/2/14 | "review of responses" | 0.4 |
| 6/4/14 | "research, amended complaint" | 6.7 |
| 6/5/14 | "research, drafting" | 3.9 |
| 6/9/14 | "research drafting" | 0.9 |
| 6/10/14 | "finalization, emails filing" | 0.8 |

[Total Reduction:  20.2 hours (23.1 total hours x 7/8 claims)]

Similarly, the following work related to reviewing and responding to United's two motions—only one of which concerned Plaintiff's ERISA claim.  Accordingly, the Court will reduce the following line items by half:

| | | |
|---|---|---|
| 9/30/14 | "review of Defendant's motions" | 2.9 |
| 11/17/14 | "preparing memorandum in opposition" | 2.1 |
| 11/18/14 | "continue prep, email" | 1.4 |
| 11/19/14 | "finalization on memo oppositions, telephone call" | 0.8 |
| 11/20/14 | "finalization, filing" | 0.9 |

[Total Reduction: 4 hours (8.1 total hours / 2 motions)]

-------------------------------------------------------------

In conclusion, the Court reduces Ms. Beachler's billable hours by 50.6 hours, leaving Ms. Beachler with a bill of 67.6 hours.  At $400 per hour, the Court finds Plaintiff is entitled to

**$27,040.00** in attorneys' fees for the substantive legal work Ms. Beachler performed on his successful ERISA claim.

      **2.**    **Bill for Attorneys Kernen and Shepler**

      Attorneys Kernen and Shepler request a total of $27,022.92 in attorneys' fees for their work in this case.  According to their billing statement, Mr. Kernen performed 21 $^{3}/_{8}$ hours of work on this case while Mr. Shepler spent a total of 56 ½ hours working on this matter.  In his affidavit, Mr. Kernen avers that his typical hourly rate is $200 and that Mr. Shepler's is $160; however, he asserts that the Court should double these rates in awarding attorneys' fees in this case.  United argues that the Court should not award any attorneys' fees to Mr. Kernen and Mr. Shepler because "the inadequate fee documentation" provided by these attorneys "does not allow for a precise review of the work they performed on this case."  (Doc. 48, Resp. at 13).

      The party requesting attorneys' fees has the burden of "establishing entitlement to an award and documenting the appropriate hours expended and hourly rates."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  In conjunction with his fee request, a claimant must submit supporting evidence that is "of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation."  *United Slate, Tile & Composition Roofers, Damp & Waterproof Workers Ass'n, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984).  When this detailed documentation is lacking, the Court in its discretion may reduce the award accordingly.  *See Perry v. Autozone Stores, Inc.*, No. 14-5185, 2015 WL 4940121, at *3 (6th Cir. Aug. 20, 2015) (reducing fee because "the lack of detail in the billing statement . . . raise[d] concerns regarding the reasonableness of the time billed"); *Brown v. Halsted Fin. Servs., LLC*, No. 3:12-CV-308, 2013 WL 693168, at *3 (S.D. Ohio Feb. 26, 2013)

(Rose, J.) ("Where the documentation is inadequate, the court may reduce the award accordingly."); *Alloys Int'l, Inc. v. Aeronca, Inc.*, No. 1:10-CV-293, 2012 WL 5495180, at *3 (S.D. Ohio Nov. 13, 2012) (Black, J.) ("Attorney fees may be reduced when fee records fail to specify the amount of time spent on discrete tasks."). Ultimately, "[i]n obtaining the number of hours expended on the case, the district court must conclude that the party seeking the award has sufficiently documented its claim." *United Slate*, 732 F.2d at 502.

After reviewing the record, the Court finds that the documentation submitted by Kernen & Shepler, LLC in support of Plaintiff's claim for attorneys' fees is fatally deficient. First, several of Messrs. Kernen and Shepler's task descriptions, e.g., "email J. Beachler," "Correspondence L. Brown III," "Conference," are so vague that the Court is unable to determine (1) whether these tasks qualify as substantive legal work and (2) whether they were related to Plaintiff's ERISA claim. Second, many of the line items on Messrs. Kernen and Shepler's bill appear to relate to Plaintiff's unsuccessful state law claims.[8] Third, several billing entries include more than one task—e.g., "Complete Final Draft of Motion in Opposition to Omaha's Motion for Judgment on the Pleadings; Draft Memorandum in Opposition to West Side's Partial Motion to Dismiss, Draft Memorandum in Opposition to Omaha's Motion to Dismiss State-Law Claims and Strike Jury Demand and Claims for Damages." The Court was able to cure these issues with Ms. Beachler's bill, by combing through her billing statement and denying or proportionally reducing each line item and the specific amount of time spent on each task. However, the Court is unable to do so with Messrs. Kernen and Shepler's bill, as they have failed to indicate how much time was spent on each specific task. Instead, they merely list a date, a description, and the total amount of hours spent working on Plaintiff's case. Therefore,

---

[8] In fact, 21 line items on Messrs. Kernen and Shepler's bill occurred before the case was removed to this Court and an ERISA claim was even contemplated.

even if some of the work they performed was done in furtherance of Plaintiff's successful ERISA claim, the Court is unable to ascertain exactly how much time they spent on these compensable tasks.[9]

For these reasons, the Court finds Plaintiff has not provided sufficient documentation to support his claim for attorneys' fees for Mr. Kernen and Mr. Shepler.  Plaintiff's motion is therefore **DENIED** with respect to this request.

## V.  COURT COSTS

Finally, Plaintiff asks the Court to award him $1,341.08 in Court costs.  Defendants argue the Court should deny this request in its entirety.

Title 28 U.S.C. Section 1920 lists several fees and costs that a court or clerk may tax as costs in an ERISA case.  But prevailing parties are not limited to recovering only these enumerated fees:  "[t]he Court may also award non-taxable costs as part of a reasonable attorney's fee under ERISA's fee-shifting statute, if such expenses are reasonable and necessary, and are typically billed to clients under prevailing practice in the jurisdiction."  *Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan*, 995 F. Supp. 2d 835, 853 (S.D. Ohio 2014).

The Court has reviewed Plaintiff's request and for the following reasons declines to award Plaintiff any costs.

- $170.00 – "Hocking Co. Common Pleas Court": **DENIED**.  Plaintiff did not prevail on any of his state law claims which formed the basis of his state court complaint.

- $136.00 – "Probate Court Costs": **DENIED**.  Plaintiff has not explained how these state probate court costs relate to his federal ERISA claim.

---

[9] The Court also notes that many of Messrs. Kernen and Shepler's line items appear duplicative of fees already billed by Ms. Beachler.  As the Sixth Circuit has recognized, "whether the lawyer ... unnecessarily duplicat[ed] the work of co-counsel" is a factor to be considered in determining the reasonableness and propriety of awarding attorneys' fees.  *Coulter v. State of Tennessee*, 805 F.2d 146, 151 (6th Cir. 1986); *see also Javery v. Lucent Technologies Inc. Long-Term Disability Plan for Mgmt. or LBA Employees*, No. 2:09-CV-00008, 2014 WL 2779427, at *5 (S.D. Ohio June 19, 2014) (Frost, J.).

- $24.52 – "Postage": **DENIED**.  First, Plaintiff has not indicated whether (and if so, what portion of) this postage was used in conjunction with his ERISA claim as opposed to his unsuccessful state law claims.  Second, 28 U.S.C. § 1920 does not expressly allow for postage to be recovered as costs.  Third, Plaintiff has failed to explain this request in any detail, precluding the Court from determining whether this expense was reasonable or necessary.  *See also Hall v. Ohio Educ. Ass'n*, 984 F. Supp. 1144, 1147 (S.D. Ohio 1997) ("[T]he overwhelming weight of authority have declined to award costs for courier services, postage, telephone or fax charges.").

- $62.40 – "Copies (416): **DENIED**.  Although the cost of copies is expressly provided for in 28 U.S.C. § 1920 when said copies were "necessarily obtained for use in the case," Plaintiff has again failed to (1) indicate whether (and if so, how many of) these copies were made in furtherance of his ERISA claim as opposed to his unsuccessful state law claims; or (2) explain in any detail what documents were copied and for what purpose.  Because the Court is unable to determine whether these copies were "necessarily obtained for use in the case," the Court finds Plaintiff's request not well-taken.

- $2,844.48 – "LexisNexis Account Subscription": **DENIED**.  Plaintiff's final request is denied on the same grounds as his previous requests.  First, Plaintiff provides insufficient detail to justify his request.  He asks for "four months of current fees" for his attorney's LexisNexis account.  However, his attorney does not specify what portion of those four months was spent researching the ERISA issues in this case.  His attorney also did not provide a billing statement from LexisNexis, nor a report of her research history.  The Court finds awarding Plaintiff costs for a LexisNexis

16

subscription, without any explanation or detailed connection to Plaintiff's ERISA

claim, would be unreasonable.

All of Plaintiff's requests for costs are therefore **DENIED**.

## VI.    CONCLUSION

The Court **GRANTS** Plaintiffs' Motion for Damages, Fees, and Costs as follows:

- The Court awards Plaintiff **$181,666.67** in damages for benefits due him under
  United's life insurance policy.

- The Court awards Plaintiff prejudgment interest at a rate of 3.25% from February
  20, 2013, to the date final judgment is entered in this case.

- The Court awards Plaintiff attorneys' fees in an amount of **$27,040.00**.

All other fees and costs are **DENIED**.

The Clerk shall enter final judgment in favor of Plaintiff and **REMOVE** this case from
the Court's pending cases list.

**IT IS SO ORDERED.**


_____*/s/ George C. Smith*_____
**GEORGE C. SMITH, JUDGE**
**UNITED STATES DISTRICT COURT**